UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:19-CR-216 |
| | ) | |
| WYNDE COLLINS | ) | |

## SENTENCING MEMORANDUM
## AND MOTION FOR DOWNWARD VARIANCE

Comes the Defendant, Wynde Collins, by and through counsel, and submits this Motion for Downward Variance and Sentencing Memorandum for this Honorable Court's consideration in Ms. Collins's sentencing hearing. In support of which the Defendant would show as follows:

I. **FACTUAL BACKGROUND**

Wynde Collins was charged on December 17, 2019, in an eight-count Indictment with one count of conspiracy to commit bank fraud in violation of 18 U.S.C.§ 1349, six counts of bank fraud in violation of 18 U.S.C.§ 1344 and §2, and one count of conspiracy to commit money laundering in violation of 18 U.S.C.§ 1956(h). [Doc. 3]. A trial of this matter began on October 4, 2022, and the jury returned a verdict of guilty as to all counts of the Indictment against Ms. Collins on October 20, 2022. [Doc. 149].

II. **SENTENCING GUIDELINE ANALYSIS**

The Initial Pre-Sentence Investigation Report (PSR) was completed on May 1, 2023. The initial PSR indicated a case offense level of seven (7) pursuant to §2S1.1(a)(1) and §2B1.1. Additionally, the PSR set out a loss amount of more than $1,500,000 resulting in an enhancement of 16 levels pursuant to §2B1.1(b)(1)(I). Additionally, the PSR indicated enhancements of two levels for sophisticated means pursuant to §2B1.1(b)(10)(C), two levels for resulting financial hardship to victims pursuant to §2B1.1(b)(2)(A)(iii). The PSR also recommended an enhancement of two levels for money laundering pursuant to §2S1.1(b)(2)(B). Finally, the PSR recommended an enhancement of two levels for role in the offense pursuant to §3B1.1(c).

1

This resulted in the PSR calculating an adjusted offense level of 31 in the instant case. Further, the PSR noted that Ms. Collins has two criminal history points, resulting in her placement in criminal history category II. Accordingly, the PSR notes that the guideline range for Ms. Collins would be 121 to 151 months.

Defendant Collins timely filed objections to the PSR in this case, raising the following objections: (1) the PSR incorrectly calculates loss amount in this case which should be actual loss amount rather than intended loss resulting in an enhancement of 14 rather than 16; (2) the PSR incorrectly recommends an enhancement based on financial hardship to victims pursuant to §2B1.1(b)(2)(A)(iii) because the individuals referenced are not "victims" as intended by the guidelines; (3) the PSR incorrectly recommends an enhancement for role in the offense pursuant to §3B1.1(c). [Doc. 172]. Should the Court agree with the objections, it would result in an offense level of 25, Criminal History Category II, resulting in an advisory guideline range of 63-78 months.

### III. PERSONAL BACKGROUND

Wynde Jeanine Collins was born in 1966 to Donna Garrett and William Wall in Detroit, Michigan. Ms. Collins is the eldest of three children and her parents divorced when she was ten years old. Ms. Collins was raised by a single mother from that point and worked hard to pursue her education. She attended the prestigious Cass Technical High School in Detroit, Michigan, one of the most prestigious accelerated magnet schools in the state, whose enrollment was offered based on academic achievement testing. Ms. Collins succeeded academically while assuming a tremendous amount of responsibility caring for her siblings and helping her single mother maintain the household. Ms. Collins graduated from Berkley High School in Berkley, Michigan. Despite becoming a mother at the tender age of 17, Ms. Collins continued to pursue her schooling, maintaining a position of the Dean's List as she obtained an Associate degree and graduating summa cum laude with a Bachelor's degree in business while continuing to work hard to support her children. Ms. Collins also obtained her Master of Business Administration from the University of Phoenix in 2021.

Ms. Collins has a loving and supportive family. Ms. Collins has two adult children and several grandchildren that she adores and has a very close relationship with. After more than half of her life at the time, Ms. Collins' father returned to his family. Now Mr. and Mrs. Garrett are in their twilight years and are each suffering declining health and mobility. Ms. Collins's parents are extremely dependent upon her physical care and assistance, which she and her sister alternate travelling to Michigan to assist in.

## IV. WYNDE COLLINS'S CHARACTER

The following individuals have offered letters in support of Wynde Collins, which are attached as exhibits to this memorandum:

1. Donale Stewart, Minister, Linwood Church of Christ;
2. Arlene Walker, longtime friend;
3. Morgan Wood, Elevation Church Ministry;
4. Donna Garrett, Evangelist and mother;
5. Latoya Stone, daughter;
6. Lenard Collins, Insurance Investigator and Husband;
7. Gaylynne Neal, Sister.

These individuals describe Wynde Collins as a devoted wife and mother. The testimonial letters from the above individuals create a record that Ms. Collins' will not pose a risk of reoffending or present any risk to the community in the future. Donale Stewart, Ms. Collins' minister describes a woman with a "humble spirit," "sincerity," and "willingness to be a better person." Friends describe her as a devoted mother, grandmother, and someone who is always willing to help others.

Undoubtedly, Wynde Collins's greatest accomplishment is her close relationship with her loving family. The letters from her family reiterate her generosity, compassion, and devotion to those that she loves. The following excerpts describe Ms. Collins best:

   a. <u>Latoya Stone</u>: "My name is Latoya Stone, I'm the daughter of Wynde Collins. I just want to start off by saying that my mother is such a great mom. We have a very close relationship. In fact, we live approximately one mile from each other. My mom has always been such a selfless, caring, kind hearted, loving, and generous person. I'm the woman I am today because of her. I can say she has instilled great morals within my brother and I. My mom has always stressed the importance of education, hard work, and simply just treating people right. I rely on my mom to help me navigate parenting my 14 yr old son. His grandmother, my mom has such a huge positive impact on his life. She is very present and has always been there for him. My mother has such a beautiful spirit. In fact, she will go over and beyond for her family. Sometimes even neglecting her needs because that's just how selfless she is. My grandparents her mother and father are having health challenges and she is one of their source of help. As far as looking after them and making sure they have what they need. Your Honor, I ask when rendering my mom's sentence that you please keep in mind the close relationship her and I share. My mother is my best friend, my go to person when I need some encouragement and uplifting. My mother is a decent person and I ask respectfully that you please consider these things."

   b. <u>Lenard Collins</u>: "My name is Lenard Collins, the significant other of Wynde Collins. Wynde and I have been together since 1992.

   Since that time and currently she has shown to be compassionate, encouraging, supportive and selfless person. She have always strived to better our family, putting her needs behind and attending to ours as well as family, friends and other people in her life. Throughout the years, we have had our ups and downs as any other couple but our relationship have withstood the test of time. Wynde is someone who truly lives for nothing other than helping others. Sometimes it's her blessing and curse because people often take advantage of her kindness. I say this because, she often see the best in people and believing what they tell her and taking it at face value. Her intentions is never to hurt anyone but always to help. Upon rendering your decision please take into consideration her characteristics and the positive aspects she adds to our community, children , grandchildren, family and friends. She is truly the heart and soul of our family

   c. <u>Gaylynne Neal</u>: (I am) the youngest of three children. Wynde Collins is my older sister. We come from humble beginnings in a single-parent household where my Mother worked long hours to make ends meet. Wynde at a young age had a tremendous amount of responsibility of taking care of her siblings, cooking and cleaning while maintaining good grades. Wynde has always

4

been smart and articulate. Wynde attended my Mom's alma mater for High School the prestigious Cass Tech which you could not attend without passing a test and a good GPA. Wynde became a Mom at the young age of 17 but still pursued her schooling and working hard. Years later Wynde married and became a exceptional mother of 2 always present and volunteering at her children's events anything, she could do to help. Wynde resided on the westside in Detroit, Michigan off of Plymouth in a mediocre community but making the best of it for her and her children. Wynde is and has always been a very hard worker and strives for excellence in herself and believing that hard work pay off by working, getting an education, being honest and helping others. My Dad came back into our lives 20 years ago and the loving caring person my sister is welcomed him back with open arms, not judging him and believing that people make mistakes but it does not define who they are. Wynde is very trusting of others and love people so much she like to believe the best in them even when they may not deserve it or should I say being dishonest. Wynde then went on to further her education while striving for better employment and knowing that come with a degree it's not enough to be smart you have to have a degree behind you. She stayed on the Dean's list the entire time of obtaining an Associate's Degree & Bachelor's in Business graduating summa cum laude.

This is while having a Partner (Lenard), Mother, Grandmother, and Daughter, Sister, Friend, co-worker and being very present in all our lives always showing her support even in the community & fundraisers. The first to give to the homeless tons of clothing etc....I remember being hospitalized with my son and just wanting to give up because I was tired and overwhelmed from all the surgeries, she took my son and cared for him as her own. While also encouraged me not to give up. Wynde often want to help others so bad that it sometime cloud her judgement of truly what the facts maybe. Judge when rendering your sentence I pray that you will reflect on the time this case has consumed Wynde's life for nearly 4 years and the toll it has taken on our family.

Judge I ask that you would be mindful of our Parents, Dad 80 years old , and our Mom 74 yrs. old who Wynde is very present in the well-being and caring from them. My Dad in the last 2 year have suffered 4 strokes and My Mom have spinal challenges in which Wynde and I take turns taking care of them both. I'm not characterizing a perfect person but my Sister who have worked hard, defied the odds and stigma placed on African Americans, strived for excellence in school, obtained high honors as a result of it.

A woman who have put her family first who love her community and by doing it so effortlessly when I know her achievements did not go without many sacrifices. Thank you from the bottom of my heart Your Honor for giving me this opportunity to send this character letter to characterize what a wonderful loving Sister she is and will always be to me. With a heavy heart, Gaylynne Neal

These excerpts from Ms. Collins' family's letters also paint a picture of a woman who has earned the love and respect of her family through her kind-hearted, loving, and generous disposition. Her family remains supportive and willing to help her in any way they can.

## V. **SENTENCING FACTORS TO CONSIDER**

Courts are presented with a litany of factors to evaluate when determining the appropriate sentence for a defendant. First, the Court must examine the appropriate guidelines and calculate the applicable range of punishment for the offense at issue. While the Guidelines were made "effectively advisory" following the United States Supreme Court decision in *United States v. Booker*, the calculation of the appropriate range is still the initial analysis for courts to undertake. *United States v. Booker*, 543 U.S. 220 (2005). The *Booker* court specifically noted in rejecting mandatory guideline ranges that courts should impose sentences in light of the overall "reasonableness" as applied to the individual defendant in question. *Id.* In addition to considering reasonableness, courts are directed to "tailor the sentence in light of other statutory concerns" including, but not limited to, the factors enunciated for departures within the guidelines and bases for variance pursuant to 18 U.S.C. §3553. In fact, courts may consider any information that is not otherwise prohibited within the Guidelines when assessing what is a reasonable sentence. *See* U.S.S.G. §1B1.4.

Following the calculation of the appropriate guideline level and ranges, the sentencing court should look to any potential grounds for downward departure set out within the guidelines that may be applicable in a given case. Next, the court must examine the applicability of any grounds for an additional variance from the calculated guideline range in the instant case. Such grounds include any of the factors set out within 18 U.S.C. § 3553(a), however are not limited to those. A district court in the post-*Booker* era is mandated by Section 3553(a) to determine the appropriate sentence for a defendant based upon the totality of the circumstances surrounding the case and under the auspice of

6

Case 3:19-cr-00216-KAC-JEM   Document 176   Filed 05/25/23   Page 6 of 14
PageID #: 5356

reasonableness. Included in this mandate is the instruction that the court "shall impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth" in the provision. 18 U.S.C. § 3553(a) (emphasis added).

Finally, after assessing the appropriate advisory range of punishment and addressing all of the enunciated factors for both departure and variance, the sentencing court may examine any additional factors in the case at issue that may be applicable or that would make the case one "outside the heartland" of cases that are contemplated by the specific section of the guidelines. In this case, Ms. Collins would move the Court to grant the objections raised to the PSR, consider the factors that support a downward variance, and impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing in this case.

### A. <u>Grounds for Variance Below Advisory Guideline Range</u>

Following calculation of the appropriate advisory guideline range and consideration of any departures from those guidelines, courts are directed to consider the list of non-exhaustive factors set out in 18 U.S.C. §3553(a) to determine a reasonable sentence for the individual before the court. The factors within the section are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; or
>     (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing

7

Case 3:19-cr-00216-KAC-JEM   Document 176   Filed 05/25/23   Page 7 of 14
PageID #: 5357

>     Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>
> (5) any pertinent policy statement;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Ms. Collins would ask the Court to examine each of these factors, vary downward from the advisory guideline range, and impose a sentence that is sufficient but not greater than necessary in this case.

### 1. Nature and Circumstances of the Offense -18 U.S.C. § 3553(a)(1)

Ms. Collins stands convicted of a number of bank fraud related offenses following a jury trial in this case. The proof at trial supported the conclusion that a number of actors were involved in the application for and receipt of loans from financial institutions that were ultimately largely not repaid by the individual borrowers. The United States' position at trial was that Ms. Collins received a percentage of the loans that were processed ranging from 5% to 15% in some cases.

Fraud offenses are serious offenses; however, it is significant to note that this is a nonviolent offense. Further, the fraud as alleged by the United States involved borrowers actively agreeing to pursue loans in their own names assisted by Ms. Collins and Alvin Johnson. Under the United States' theory, Ms. Collins received a percentage fee and the borrowers received the bulk of the loan proceeds. Regardless, the United States has pursued an "intended loss" theory, to which Ms. Collins has objected, that artificially and excessively inflates the advisory guideline exposure in this case.

The loss amount in this case is the primary driver of the guideline exposure, however loss amount has been recognized as a highly inaccurate measure of the seriousness of a financial

8

offense. *United States v. Musgrave*, 647 Fed. Appx. 529, 532-33 (6th Cir. 2016)("[T]he data suggest that loss is an unsound measure of the seriousness of many offenses, with the result that judges are increasingly willing to go below the Guidelines when they impose sentences in white-collar cases." (quoting Mark H. Allenbaugh, Drawn from Nowhere: A Review of the U.S. Sentencing Commission's White–Collar Sentencing Guidelines and Loss Data, 26 Fed. Sent'g Rep. 19, 19 (2013)). This Court has the discretion to consider the illogical and overinflated figures proposed in this case and adjust the sentence imposed pursuant to the factors outlined in 18 U.S.C. § 3553(a). Ms. Collins would ask this Court to vary downward to correct the inflated and unreasonable loss amount in this case.

2. **History and Characteristics of Defendant-18 U.S.C. § 3553(a)(1)**

Ms. Collins is the picture of an individual who has worked her entire life to better herself and her family. Ms. Collins had her first child, LaToya, at the age of 17 and has worked every day since to ensure that her family was provided for. After raising her two children, Ms. Collins completed her bachelor's degree. Ms. Collins ultimately obtained a Master of Business Administration degree. Ms. Collins presents the picture of an individual who has certainly had missteps in life but has shown that she has the ability and the drive to correct those and work to never repeat them. Ms. Collins is educated, has a strong employment record, and additionally has no history of drug or alcohol problems. Ms. Collins is an individual who is hardworking and will have the ability to obtain and maintain gainful employment upon her release. Her education, work ethic, and employability are all strong indicators of her ability to be a successful member of society upon release.

3. **The Need for The Sentence Imposed- 18 U.S.C. § 3553(a)(2)**
    a. **To reflect seriousness of the offense, promote respect for law, and provide just punishment for the offense-18 U.S.C. § 3553(a)(2)(A)**

Ms. Collins is facing a substantial advisory guideline range for the offenses at issue in this case. Any sentence in this matter is likely to be a substantial period of confinement followed by a period of release. The imposition of a term of imprisonment is sufficient to reflect the seriousness of the offense in this matter. A longer period of confinement will do nothing to enhance that. The offenses are undoubtedly serious, however the imposition of a prison sentence of any time period is more than sufficient here.

### b. Provide Adequate Deterrence and Protect the Public-18 U.S.C. § 3553(a)(2)(B) &(C)

Ms. Collins, an individual who has never served any period of incarceration, will likely receive a substantial sentence to serve in this case. The level of deterrence that will accompany the term of imprisonment and the substantial restitution in this case cannot be understated. Additionally, Ms. Collins is extremely unlikely to recidivate for a number of reasons. First, she has a relatively minor criminal history which is associated with lower levels of reoffending, supported by studies conducted by the United States Sentencing Commission. *See* U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview*, (2016)("A federal offender's criminal history was closely corelated with recidivism rates…), available at https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview.

Additionally, Ms. Collins' age also makes her a much lower risk of recidivism. The 2016 Report cited above also noted that an "offender's age at time of release into the community" was "closely associated" with differences in recidivism rates with offenders who are over the age of 60 presenting the least likelihood of recidivism among all groups. *Id* at 23. As noted, Ms. Collins will be 57 at the time of sentencing and likely over the age of 60 at the time of her release into the

10

Case 3:19-cr-00216-KAC-JEM    Document 176    Filed 05/25/23    Page 10 of 14
PageID #: 5360

community. Finally, the same study also noted that both women and individuals with advanced degrees are much less likely to reoffend than other groups. *Id.* at 24. Each of these factors related to Ms. Collins indicate that she is an extremely low risk to reoffend which is a significant consideration this Court may credit pursuant to 18 U.S.C. § 3553(a) and weigh in favor of a sentence at the bottom or below the bottom of the guideline range. The offense was non-violent and Ms. Collins' conditions of supervision following her incarceration will be sufficient to provide any necessary protective measures.

### 4. The Need to avoid unwarranted sentencing disparities- 18 U.S.C. §3553(a)(6)

There has been an increasing national trend toward shorter sentences in federal cases. This is particularly true in white collar and fraud type cases. *See* United States Sentencing Commission FY 2021 Datafiles ("The average guideline minimum and average sentence imposed have decreased over the past five years."). For instance, the Sixth Circuit Court of Appeals noted in *United States v. Musgrave* that of all white-collar offenders within the Sixth Circuit approximately 30% receive a sentence without imprisonment, a portion of which receive home confinement. *United States v. Musgrave*, 647 Fed. Appx. 529, 532 (6th Cir. 2016). This trend is reiterated in the Sentencing Commission Data, which notes that approximately 40 percent of theft, property destruction, and fraud offenders received a downward variance in Fiscal Year 2021 with an average reduction of approximately 60 percent.

The Sixth Circuit noted in *Musgrave* that it is not only common practice of courts in our circuit to vary substantially below the advisory range in non-violent white-collar cases, but also that it may be encouraged considering the lack of empirical support for the loss guidelines. That court and others have also cited the appropriateness of downward variances in white collar offenses to allow restitution to be more readily satisfied. *Musgrave*, 647 Fed. Appx. at 536 (noting that the

11

Case 3:19-cr-00216-KAC-JEM  Document 176  Filed 05/25/23  Page 11 of 14
PageID #: 5361

goal of obtaining restitution is best served by a non-incarcerated and employed defendant). The PSR notes that JSIN data confirms that the bulk of offenders who have been sentenced with an offense level of 31 have received some level of variance, indicating an average sentence of 101 months (from a guideline range of 121 to 151 months). While Ms. Collins maintains that her advisory guideline range is appropriately calculated much lower, the data continues to confirm that significant downward variances are common in these types of offenses. For instance, were the Court to grant objections to the PSR, the accompanying JSIN data continues to reiterate a pattern of substantial downward variances in white collar offenses. For a Category II offender with an offense level of 29 and an advisory guideline range of 97-121 months, the average sentence was 70 months with 43% of offenders receiving a downward variance. For a Category II offender with an offense level of 27 and an advisory guideline range of 78 to 97 months, the average sentence was 66 months with 43% of offenders receiving a downward variance. And finally, for a Category II offender with an offense level of 25 and an advisory guideline range of 63-78 months, the average sentence was 47 months with 39% of offenders receiving a downward variance. Ms. Collins would ask the Court to take these trends into account in fashioning a reasonable sentence in this case.

## VI.　**CONCLUSION**

In the instant case, the Court is presented with a 56-year-old wife, mother, and grandmother convicted of a series of fraud offenses. Ms. Collins has a strong educational background and the ability to work to satisfy restitution if given the opportunity. Further, Ms. Collins presents an extremely low risk of recidivism based on the type of offense, her age, her education, and accordingly will be unlikely to present a risk to the public in the future. Ms. Collins will be required to satisfy restitution in this case, which is more easily satisfied if she is permitted to work as soon

12

Case 3:19-cr-00216-KAC-JEM   Document 176   Filed 05/25/23   Page 12 of 14
PageID #: 5362

as possible. Additionally, Ms. Collins, as reflected in the PSR does not have the present ability to satisfy a fine.

The Court is tasked with fashioning a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing. Accordingly, Ms. Collins would move the Court to grant the objections raised to the PSR, consider the factors that support a downward variance, and impose a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing in this case. Additionally, Ms. Collins would state that a period of supervised release of three years would be more than sufficient in this case.

RESPECTFULLY SUBMITTED this 25 May 2023.

_____
GREGORY P. ISAACS, BPR# 013282

*s/Ashlee B. Mathis*
ASHLEE B. MATHIS, BPR #034342

THE ISAACS LAW FIRM
618 South Gay Street, Suite 300
Post Office Box 2448
Knoxville, Tennessee 37901-2448
865.673.4953/(fax)673.4950
www.isaacslawfirm.com
gpi@isaacslawfirm.com
abmathis@isaacslawfirm.com

13

## CERTIFICATE OF SERVICE

  It is hereby certified that a true and correct copy of the foregoing pleading was filed electronically. Notice of this filing be forwarded via the Court's electronic filing system to all parties on the electronic filing receipt and/or by hand-delivery or by placing a true and correct copy of the same in the United States Mail with sufficient postage to carry the same to its destination.

Annie Svolto
United States Assistant Attorney General
Howard H. Baker, Jr. U.S. Courthouse
800 Market Street, Room 211
Knoxville, Tennessee 37902
865-545-4167
Anne-Marie.svolto@usdoj.gov

Jennifer Kolman
United States Assistant Attorney General
Howard H. Baker, Jr. U.S. Courthouse
800 Market Street, Room 211
Knoxville, Tennessee 37902
865-545-4167
Jennifer.Kolman@usdoj.gov

  DATED this 25 May 2023.

                 _____
                 Gregory P. Isaacs